UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES ROBINSON,

        Plaintiff,

v.

HEIDI E. WASHINGTON, et al.,

        Defendants.
_____/

Case No. 1:22-cv-262

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee for this case. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Killough, Card, and Lake. The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claims against the remaining Defendants. Plaintiff's First Amendment claims against Defendants Bush, Braman, Kecalovic, and Van Beek remain in the case.

**Discussion**

I.   **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E. Washington, MDOC Deputy Director Jeremy Bush, MDOC Administrative Assistant Norma Killough, and the following MTU personnel: Warden Melinda Braman, Facility Manager Steven Card, Grievance Coordinator N. Lake, Unit Counselor J. Van Beek, and mail room employee Mirela Kecalovic.

A.   **First Instance of Mail Rejection**

On March 16, 2020, Defendant Kecalovic issued him a "Notice of Package/Mail Rejection regarding [five] magazines[:] Go Viral Vol 3; Go Viral Vol 2; Go Viral Latina #3; Go Viral Vol #2, [and] Buttz Milfs." (Compl., ECF No. 1, PageID.3.) The notice "cited MDOC Policy Directive 05.03.118 Prisoner Mail 'Unapproved Vendor.'" (*Id.*) Plaintiff requested a hearing regarding the rejection. (*Id.*) On April 1, 2021, Prison Counselor Johnston (not a party) concluded that there was no violation, and that Plaintiff could have the magazines because they came from the publisher. (*Id.*) The five magazines were given to Plaintiff following the hearing. (*Id.*)

Four days later, Johnston called Plaintiff back to her office and asked for the magazines. (*Id.*) She told Plaintiff that a new directive, paragraph YY in MDOC Policy Directive 05.03.118, stated that "if the hearing officer finds that the mail does not [v]iolate [p]olicy the mail shall be returned to the mailroom to determine if any other [v]iolations of the [p]olicy exist[]." (*Id.*) If there are other violations, the mail "shall be processed as set forth in Paragraph[s] VV through XX." (*Id.*) If there are no other reasons to reject the mail, it is "promptly delivered to the prisoner unless

2

it is determined by the Warden or designee that the Hearing Officer's decision was no[t] supported by policy and a rehearing is ordered." (*Id.*, PageID.3–4.)

On May 4, 2021, Plaintiff submitted a grievance against Defendants Kecalovic and Card for violating his due process rights, as well as MDOC Policy Directive 05.03.118 ¶ YY. (*Id.*, PageID.4.) Administrative Assistant Williams (not a party) denied the grievance because Defendant Kecalovic "said that [Plaintiff] was issued another mail rejection on [May 17, 2021] concerning the [five] magazines." (*Id.*)

On June 3, 2021, Plaintiff had another administrative hearing regarding the magazines. (*Id.*) Johnston again concluded that the magazines did not violate policy because they were from the publisher. (*Id.*)

Six months later, Defendant Van Beek held another hearing regarding the same five magazines. (*Id.*) He rejected the magazines because Defendant Kecalovic "didn't see the approved publisher name." (*Id.*) Plaintiff contends that at all three hearings, he provided proof to "show that Steven Ward is the [p]ublisher and owner of The Mag Depot[, which] was the publisher." (*Id.*)

**B.      Second Instance of Mail Rejection**

On April 15, 2021, Defendant Kecalovic issued Plaintiff a notice of rejection for three magazines: "(1) Goat Platinum Edition, photo depicting [b]ondage on page 65; (2) Goat Black Special Edition[; and] (3) Goat Gold Edition, from unapproved vendor sold by Gyro Magazine, not directly from the [p]ublisher." (*Id.*) Plaintiff requested a hearing. (*Id.*) On April 27, 2021, Johnston conducted the hearing and "found that page 65 of Platinum Edition does not appear to be bondage." (*Id.*) She also concluded that Gyro is published by Goat Magazine. (*Id.*, PageID.5.) Johnston concluded that Plaintiff was allowed to receive the magazines. (*Id.*)

On March 24, 2021, Plaintiff filled out a disbursement authorization catalog order form for three Goat magazines. (*Id.*) On April 7, 2021, Plaintiff filled out another disbursement form for four Goat magazines. (*Id.*) The money was taken from his prisoner trust account. (*Id.*)

On May 11, 2021, Defendant Kecalovic issued Plaintiff a notice of rejection regarding three magazines: (1) Goat Platinum; (2) Goat Black Special Edition; and (3) Goat Gold Edition. (*Id.*) The reason given was that the mail posed a threat to the security of the facility because it came from a reshipping company. (*Id.*) Plaintiff requested a hearing on the rejected magazines. (*Id.*)

On May 27, 2021, Defendant Kecalovic issued Plaintiff two notices of rejection regarding two packages containing three Goat magazines each. (*Id.*) The reason provided was that the mail posed a threat to the security of the facility because it came from a reshipping company. (*Id.*) Plaintiff requested a hearing. (*Id.*)

Plaintiff had an administrative hearing regarding the four rejections concerning Goat magazines on June 3, 2021. (*Id.*) Johnston served as the hearing officer. (*Id.*) Plaintiff presented evidence that no violation occurred. (*Id.*) Johnston agreed that no violation of policy had occurred, and that Plaintiff could have the magazines. (*Id.*)

On August 11, 2021, Johnston told Plaintiff that another administrative hearing regarding the Goat magazines had to be conducted. (*Id.*, PageID.6.) When Plaintiff asked why, she staid that Defendant Card and the MDOC Central Office said that the magazines were to be rejected. (*Id.*) Plaintiff presented evidence indicating that MDOC Policy Directive 05.03.118 did not state anything regarding reshipping being a violation. (*Id.*) The hearing officer postponed the hearing. (*Id.*)

Defendant Van Beek held the administrative hearing regarding the Goat magazines on December 29, 2021. (*Id.*) Plaintiff asked why the magazines were being rejected if they did not violate policy. (*Id.*) Defendant Van Beek said that Defendants Killough and Card indicated that the magazines were "not to be let in" and that they should be rejected as possibly posing a threat to the security of the facility. (*Id.*)

Based on the foregoing, Plaintiff asserts violations of his First and Fourteenth Amendment rights.[1] (*Id.*) He seeks compensatory and punitive damages. (*Id.*, PageID.8.)

### C. Overview of MDOC Policy Directive 05.03.118

Plaintiff references MDOC Policy Directive 05.03.118, which governs prisoner mail, throughout his complaint. Pursuant to the policy, prisoners are permitted to receive books, magazines, and other publications if they are: (1) "[o]rdered by a member of the public from an internet vendor identified in Attachment A or from the publisher and sent directly to the prisoner by the vendor or publisher"; or (2) "[o]rdered by the prisoner from a vendor identified in Attachment B or from the publisher and sent directly to the prisoner from the vendor or the publisher." MDOC Policy Directive 05.03.118 ¶ Z(1), (2) (eff. Mar. 1, 2018). Prisoners' orders "must be through established facility ordering procedures." *Id.*

Inmates are also prohibited "from receiving mail that may pose a threat to the security, good order, or operation of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner. *Id.*, ¶ NN. Mail depicting acts of bondage are not permitted. *Id.*,

---

[1] Plaintiff asserts that he is filing his complaint "on behalf of himself and all other persons similarly situated." (ECF No. 1, PageID.1.) Plaintiff, however, lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (citing *McGowan v. Maryland*, 366 U.S. 420, 429 (1961)); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).

5

¶ NN(5). Moreover, nude photographs are not permitted "except if included in a publication sent directly from the publisher or an authorized vendor." *Id.*, ¶ NN(13). Furthermore, photographs "depicting actual or simulated sexual acts by one or more persons" are prohibited. *Id.*, ¶ NN(14). Publications that are not received directly from publishers or approved vendors are also prohibited. *Id.*, ¶ NN(8).

The policy provides further that when mail is believed to violate policy, a Notice of Package/Mail Rejection must be prepared and sent to the prisoner. *Id.*, ¶ VV. The notice "shall identify the specific item believed to be in violation of this policy and why the item is believed to be in violation of policy." *Id.* An administrative hearing must be conducted unless the "prisoner waives his/her right to a hearing in writing by choosing an allowable disposition for the item." *Id.*, ¶ WW. If the hearings officer determines that the mail does not violate this policy, "the mail shall be returned to the mailroom to determine if any other violations of policy exist." *Id.* ¶ YY. "If there is no other reason to reject the mail pursuant to this policy, the mail shall be promptly delivered to the prisoner unless it is determined by the Warden or designee that the hearings officer's decision was not supported by policy and a rehearing is ordered." *Id.*

If a hearings officer determines that a publication violates the policy "based on its written or pictorial content, the publication shall be submitted in a timely manner to the Warden along with a copy of the Notice and the Administrative Hearing Report." *Id.*, ¶ AAA. If the Warden agrees that the publication violates policy based upon its written content, he or she shall proceed as set forth below. *Id.* "In all other cases involving the pictorial content of a publication, the Warden shall make the final decision. The Warden may maintain a list of publications rejected under his/her authority due to pictorial content." *Id.*

6

If the Warden concurs with the hearings officer's decision that a publication violates policy based upon written content, the Warden or designee "shall promptly submit copies of the Notice, the Administrative Hearing Report, the publication's cover, and a representative sampling of the specific sections of the publication found to be in violation of this policy to the CFA Deputy Director[2] or designee for a final determination whether the publication violates this policy." *Id.*, ¶ BBB. If the CFA Deputy Director or designee agrees that a publication violates policy, it is placed on the Restricted Publications List. *Id.*, ¶ CCC.

An inmate who disagrees with the outcome of a hearing may file a grievance. MDOC Policy Directive 05.03.118, ¶ EEE. The inmate may also appeal the proposed rejection within ten business days after the date of the notice of rejection by sending a letter to the Warden. *Id.*, ¶ FFF. If the publication at issue was rejected because it was already on the Restricted Publication's List, the appeal "shall be forwarded to the CFA Deputy Director or designee through the appropriate chain of command for review." *Id.*

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

---

[2] The current CFA Deputy Director is Defendant Bush. *See* https://www.michigan.gov/documents/corrections/MDOC_Org_Chart_5_702523_7.pdf (last accessed Apr. 19, 2022).

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Official Capacity Claims

Plaintiff indicates that he is suing all Defendants in both their individual and official capacities. (ECF No. 1, PageID.1.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.

1994). As noted above, however, Plaintiff seeks only damages,[3] and official capacity defendants are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims against Defendants in their official capacities.

## B. Individual Capacity Claims

### 1. Claims Against Defendants Washington and Lake

Plaintiff fails to allege that Defendants Washington and Lake took any action against him. Rather, it appears that Plaintiff seeks to hold these individuals liable due to their respective supervisory positions. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

---

[3] Plaintiff initially suggests that his complaint includes a request for declaratory judgment, but his request for relief seeks only damages. (Compl., ECF No. 1, PageID.1, 8.)

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts suggesting that Defendants Washington and Lake encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against these individuals are premised on nothing more than respondeat superior liability, his action fails to state a claim against Defendants Washington and Lake.

### 2. Fourteenth Amendment Due Process Claims

Plaintiff alleges violations of his Fourteenth Amendment due process rights. (ECF No. 1, PageID.6.) The elements of a procedural due process claim are (1) a life, liberty, or property

interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

It is clear from Plaintiff's complaint that he received the process to which he was due. Plaintiff received notices of mail rejection on each occasion when his magazines were rejected. He requested hearings on each occasion and was provided those hearings, where he had opportunities to challenge each rejection. MDOC Policy Directive 05.03.118 also allows for appeal of the decision, which Plaintiff took advantage of by filing at least one grievance. Because Plaintiff received the process to which he was due, his Fourteenth Amendment due process claims will be dismissed.

### 3. First Amendment Claims

Plaintiff also contends that the rejection of his incoming magazines violated his First Amendment rights. (EF No. 1, PageID.6.) A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive

11

mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues.") (internal quotes omitted)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system []." *Martin*, 803 F.2d at 240 n.7 (*quoting Pell*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).

Given Plaintiff's allegations, the Court concludes that he has set forth a plausible First Amendment claim against Defendants Kecalovic and Van Beek. As noted above, Defendant Kecalovic is the mail room employee who issued the numerous notices of rejection to Plaintiff, and Defendant Van Beek is the hearings officer who upheld the rejection of the magazines. Moreover, Plaintiff has alleged that Defendant Card, as the Facility Manager, twice indicated that the Goat magazines were not to be allowed in the facility. (ECF No. 1, PageID.6.)

Plaintiff also suggests that Defendants Killough, an administrative assistant at the Central Office and Defendant Card, the MTU Facility Manager, indicated that the magazines were not to be allowed in the facility. (*Id.*) Defendant Killough, however, is an administrative assistant at the Central Office. As set forth above, the CFA Deputy Director, who is currently Defendant Bush, has the ultimate say as to whether a publication violates policy. *See* MDOC Policy Directive

05.03.118, ¶ BBB. Moreover, the Warden of the facility, who is currently Defendant Braman, makes the final decision regarding pictorial content of publications. *Id.*, ¶ AAA. Given the policy and Plaintiff's allegations, the Court infers that Defendants Bush and Braman made the final decision regarding the magazines, and that Defendants Killough and Card were merely responsible for passing those decisions on. Accordingly, while the Court will dismiss Plaintiff's First Amendment claim against Defendants Killough and Card, Plaintiff's First Amendment claim against Defendants Bush and Braman may proceed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Killough, Card, and Lake will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process claims against the remaining Defendants. Plaintiff's First Amendment claims against Defendants Bush, Braman, Kecalovic, and Van Beek remain in the case.

An order consistent with this opinion will be entered.

Dated:  May 10, 2022                                         /s/ Hala Y. Jarbou
                                                              HALA Y. JARBOU
                                                              UNITED STATES DISTRICT JUDGE